IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| MEDDRICK L. DANIEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:08-00678 |
| | ) | Judge Nixon |
| RUTHERFORD COUNTY, a political | ) | Magistrate Judge Bryant |
| Subdivision of the State of Tennessee, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Defendant Rutherford County's ("Defendant" or "Rutherford County") Motion for Summary Judgment ("Defendant's Motion") (Doc. No. 20) and supporting Memorandum (Doc. No. 26). Plaintiff Meddrick L. Daniel ("Plaintiff" or "Daniel") filed a Response (Doc. No. 28), and Defendant subsequently filed a Reply to Plaintiff's Response (Doc. No. 33). Also pending are Defendant's six Motions in Limine (Doc. Nos. 37–42). Plaintiff responded to Defendant's Motion in Limine 5 (Doc. No. 43) but to no others. For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**. Accordingly, Defendant's Motions to Strike are **DENIED as moot.**

### I. BACKGROUND

On November 8, 2004, Plaintiff Daniel, an African-American male, was hired as a full-time, employee at will Detention Officer at the Rutherford County Sheriff's Office ("RCSO"). (Doc. No. 26, at 3–4). He has worked as a Detention Officer for RCSO since that time, and continues to work there at the time of this writing. (Doc. No. 24, Att. 1, at 20). Daniel currently

-1-

earns $29,550 per year. (*Id.,* at 50). Nearly five years after being hired, he remains in the same entry-level position in which he started. (Doc. No. 28, at 4). Daniel alleges that since he was hired, Rutherford County has repeatedly passed over him in favor of less qualified white employees for various promotions and higher paying positions. (Doc. No. 1, at 1). Daniel contends that he was qualified for the upper level positions he pursued, and that Rutherford County's intentional and deliberate refusal to promote him over a course of years is evidence of a systematic racism with regard to Defendant's hiring, transfer, promotions and disciplinary procedures. (Doc. No. 28).

In general, Daniel contends that, because of his race, he has suffered discrimination in the form of being denied transfers and promotions and receiving unwarranted disciplinary action. (Doc. No. 1). Plaintiff also asserts that these actions by RCSO, in addition to some arguably racially offensive behavior by his co-workers, amount to unwelcome harassment. (*Id.*) Daniel further claims that after he complained to his supervisor, Lieutenant Salandy, about harassment he was experiencing from a superior, Corporal Parker, Daniel was retaliated against in the form of "baseless" disciplinary reports, which were used against him when he applied for promotions and job transfers. (Doc. No. 28, at 16). On July 11, 2008, Plaintiff filed this employment discrimination lawsuit pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq.*, the Tennessee Human Rights Act ("THRA"), TENN. CODE ANN. §§ 4-21-101 *et seq.* (2009), the Tennessee "Whistleblower Act," TENN. CODE ANN. § 50-1-304, and other common law provisions. Plaintiff seeks relief in the form of compensatory, punitive, and pecuniary damages (including back pay), and injunctive relief. (Doc. No. 1, at 9).

In March of 2006, Daniel passed his physical fitness ("PT") test, a prerequisite for applying to the position of patrol officer. On May 1, 2006, Daniel submitted an interest letter for

the position of patrol officer. (Doc. No. 24, Att. 2, Ex. 15). He was not offered the position—instead, a white candidate was transferred into the position. Plaintiff describes the position of patrol officer as a lateral transfer with a higher pay grade—a position in the Patrol Unit would earn him $30,800. (Doc. No. 24, Att. 1, at 49).

In January of 2008, Plaintiff states that he sent an email to Lt. Sloan indicating his interest in a position as transportation officer. (*Id.*, at 76). Deputy Pollard, a white male, was offered the position instead. (*Id.*, at 53). Plaintiff asserts that the position would have been a promotion because it would have led to opportunities for additional hours, which would lead to extra income, and he would not be required to work weekends. (*Id.*, at 55).

In March 2008, two Field Training Officer ("FTO") positions became available, but Plaintiff was never offered an FTO position, a position available only by invitation. All of the officers who have been offered and have accepted the position since Daniel has been employed at RCSO were white, including: Corporal Grissom, a white male whose brother is a lieutenant of narcotics at RCSO; Christian, a white female who lacked Daniel's seniority; and Thomas, whose father is a major in the Criminal Investigations Division. (*Id.*, at 70–71). Since then, Daniel has been offered a position as an FTO, but has declined. He asserts that an FTO position is "just a title," (*Id.*, at 55) and not a promotion. (Doc. No. 28, at 11).

At some point not identified by either party, Daniel also applied for the position of School Resource Office ("SRO"), which would have paid $40,000. (*Id.*, at 80–81). Plaintiff concedes, however, that he first had to be a member of the Patrol Unit to be eligible for that position. (*Id.*). Daniel does not state that he has ever been a member of the Patrol Unit.

Daniel asserts he has endured harassment and hostility at the workplace during his employment at RSCO. In addition to RSCO's refusal to transfer him, Daniel recalls viewing a

picture of a Confederate flag on the cellular phone of a co-worker, Officer McMahon. Daniel also recalls the same officer saying "Run, chicken, run" in relation to African Americans four or five times. (*Id.,* at 66). Daniel also recalls being offended by a picture, hanging in Lt. Salandy's office, of a black man sitting on a donkey with a radar gun with a caption that reads "Trinidad's Finest." Daniel claims the man in the picture resembles Salandy. Salandy asserts that he put the picture there, that it is not of him, and that he is not offended by it. (Doc. No. 23, at 3).

While Daniel did not file a written complaint about the discrimination or harassment he suffered at work, Daniel did at some unspecified point accompany Felix Rankins while Rankins informally complained to Salandy about Parker's discriminatory actions. (Doc. No. 24, Att. 1, at 105). Daniel claims that as a result of this meeting, he was retaliated against in the form of disciplinary actions, which were subsequently used to deny him transfers and promotions. (Doc. No. 28, at 15–16).

Defendant Rutherford County denies Plaintiff's allegations of discrimination, harassment and retaliation (Doc. No. 10) and on July 17, 2009, filed a Motion for Summary Judgment alleging that Plaintiff lacks evidence to support his claims (Doc. No. 20). Defendant argues in its supporting brief that Plaintiff's allegations are insufficient to overcome Plaintiff's prima facie burden for discrimination, harassment or retaliation. (Doc. No. 26).

While employed at RCSO, Daniel engaged in several policy violations and had some work performance deficiencies, only some of which were written up. (Doc. No. 26, at 4). In 2006, three of Daniel's violations were reduced to writing. On February 18, 2006, Daniel received a Letter of Instruction for improper use of radio and central white phone while on duty. (Doc. No. 24, Att. 1, at 37). That week, Daniel was assigned the central control post, where he was responsible for making announcements over the public announcement system. For each

type of announcement, a script is posted on the wall from which officers are expected to read. (*Id.,* at 34–35).  On Saturday, Daniel made the announcement for visitation as written, and then added, "Please remember to buckle up and please drive safely."  (*Id.,* at 35).  Corporal Parker, Daniel's superior, instructed him to read the posted announcements verbatim.  (*Id.*).  Later that day, Daniel made another announcement, this time related to count time, paraphrasing another posted script.  (*Id.*).  Approximately five days later, Daniel met with Salandy, Parker, and other superiors, and received a Letter of Instruction for the incident.  (*Id.,* at 36).  He signed the letter on February 23, 2006, and did not appeal it.  (*Id.*).

On August 19, Daniel was overheard calling a colleague, Deputy Mitchell, known for walking around with his head down and hands in his pockets, "stupid."  (*Id.,* at 38).  The following day, a door in Tower 5 was found ajar.  (*Id.*).  Daniel was responsible for ensuring that that door was locked.  (*Id.*).  The day after, he received a Letter of Instruction related to both incidents.  Daniel signed the document, and did not appeal it.  (*Id.,* at 40–41).

Daniel claims that these disciplinary actions were baseless—while he admits to committing the acts alleged in the Letters of Instruction, he still asserts that they were unwarranted.  Regarding his improper use of the white phone, Daniel asserts it was common for officers to deviate from the script and that he was not personally aware of other officers being disciplined for such a minor indiscretion.  (Doc. No. 28, at 6).  Regarding calling Mitchell "stupid," Daniel insists he was "just joking" and speculates that Parker forced Mitchell to file a complaint against him.  (*Id.,* at 7).  Regarding the allegation that he left the security door ajar, Daniel asserts he was not formally written up for this action, although the Letter of Instruction dated August 21, 2006 indicates otherwise.  (Doc. No. 24, Att. 2, Ex. 12).

## II. Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides in part that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Advisory Committee for the Federal Rules has noted that "[t]he very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."

Mere allegations of a factual dispute between the parties are not sufficient to defeat a properly supported summary judgment motion; there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). A genuine issue of material fact is one which, if proven at trial, would result in a reasonable jury finding in favor of the non-moving party. *Id.,* at 247–48. The substantive law involved in the case will underscore which facts are material and only disputes over outcome determinative facts will bar a grant of summary judgment. *Id.,* at 248.

While the moving party bears the initial burden of proof for its motion, the party that opposes the motion has the burden to come forth with sufficient proof to support its claim, particularly when that party has had an opportunity to conduct discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, the non-movant may not rely solely on conclusory allegations, but rather must come forward with affirmative evidence which establishes its claims and raises an issue of genuine material fact. *Id.,* at 324. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. 477 U.S. at 249–50 (citations omitted). It is true, however, that in ruling on a motion for summary judgment, the court must

-6-

review the facts and reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Further, the Court will closely scrutinize the movant's papers while indulgently treating those of the opponent. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted).

To determine if a summary judgment motion should be granted, the court should use the standard it would apply to a motion for a directed verdict under Rule 50(a) of the Federal Rules of Civil Procedure. *Anderson*, 477 U.S. at 250. The court must determine whether a reasonable jury would be able to return a verdict for the non-moving party and if so, the Court must deny summary judgment. *Id.,* at 249. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989) (citations omitted).


### III. ANALYSIS

#### a. Title VII and THRA

Plaintiff asserts the following claims under both Title VII and the THRA: (1) disparate treatment discrimination; (2) disparate impact discrimination; (3) harassment; and (4) retaliation. Defendant asserts that all claims should be dismissed because Plaintiff fails to raise any genuine issue of material fact. For the following reasons, the Court hereby agrees and GRANTS Defendant's Motion for Summary Judgment on all claims under Title VII and THRA.

##### i. *Statute of Limitations*

Under Title VII, a plaintiff must file a charge with the Equal Employment Opportunity Commission ("EEOC") within three hundred (300) days of the alleged unlawful employment

practice.  42 U.S.C.S. § 20003e-5(e)(1).  Under the Tennessee Human Rights Act, complaints filed one year after the act of discrimination are time-barred.  TENN. CODE ANN. § 4-21-311(d). Defendant asserts that Plaintiff's claim with regard to his request for a transfer to the Patrol Division is barred by the statutes of limitations under both the Tennessee Human Rights Act and Title VII, and should be dismissed.  (Doc. No. 26, at 7–8).  Plaintiff has not responded to Defendant's argument regarding the statutes of limitations in his Response Brief.  We thus consider Defendant's assertions undisputed.

Plaintiff was eligible for transfer to the Patrol Unit from March 3, 2006 to March 2, 2007. (Doc. No. 24, Att. 1, at 113).  Plaintiff did not file his Charge of Discrimination with the EEOC until March 17, 2008—one (1) year and fifteen (15) days after the alleged adverse employment action.  (*Id.,* at 77).  Plaintiff did not file his Complaint until July 11, 2008—one (1) year, four (4) months, and nine (9) days after the alleged adverse employment action.  Because Plaintiff's EEOC charges were filed more than three hundred (300) days after the alleged discriminatory behavior, the claims related to the Patrol Unit are barred under Title VII.  Similarly, Plaintiff filed his Complaint in the district court more than one (1) year after these alleged acts occurred, which bars the claims under the THRA.  We therefore find that Plaintiff's Title VII and THRA claims with regard to his request for a transfer to the Patrol Unit are time barred as a matter of law.  Defendant's Motion for Summary Judgment regarding Plaintiff's claims related to Rutherford County's refusal to transfer Daniel to the Patrol Unit are hereby GRANTED.

### ii.  *Discrimination: Disparate Treatment*

Title VII and the THRA share a common purpose, and the requirements necessary to prevail on claims of discrimination under these statutes are virtually identical.  *See Newman v. Fed. Express Corp.,* 266 F.3d 401, 406 (6th Cir. 2001) (comparing THRA and federal anti-

Case 3:08-cv-00678   Document 47   Filed 01/05/10   Page 8 of 23 PageID #: 859

discrimination statutes).  In order to establish his claim of race discrimination under these two

statutes, a plaintiff must either provide direct evidence of intentional discrimination by the

defendant, or introduce circumstantial evidence that would support an inference of

discrimination.  *Brennan v. Tractor Supply Co.*, 237 F. App'x. 9, 16 (6th Cir. 2007).  Direct

evidence is evidence that if believed, "requires the conclusion that unlawful discrimination was

at least a motivating factor in the employer's actions," and "does not require a factfinder to draw

any inferences in order to conclude that the challenged employment action was motivated at least

in part by prejudice against members of the protected group."  *Johnson v. Kroger Co.*, 319 F.3d

858, 865 (6th Cir. 2003) (internal quotations omitted).  In the absence of direct evidence, as is

the case here, Plaintiff must present circumstantial evidence through the burden shifting

paradigm set forth in *McDonnell Douglas Corp. v. Green*.  411 U.S. 792 (1973); *see also*

*Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 593 (6th Cir. 2007).

Under the burden-shifting analysis, Plaintiff bears the initial burden to establish a prima

facie case.  To do so, Plaintiff must present evidence on all of the following elements: (1) he is a

member of the protected class; (2) he was otherwise qualified for the position; (3) he suffered an

adverse employment action; and (4) he was otherwise treated less favorably than a similarly

situated employee outside of his protected class.  *McDonald Douglas Corp.*, 411 U.S. at 802.  By

proving these elements, Plaintiff establishes "a rebuttable presumption of discrimination, and the

burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the

challenged employment action."  *Michael*, 496 F.3d at 593 (quoting *Carter v. Univ. of Toledo*,

349 F.3d 269, 273 (6th Cir. 2003)).  If Defendant is successful in establishing a legitimate,

nondiscriminatory reason for the adverse action, then the burden shifts back to Plaintiff to prove

that the proffered reasons were actually a pretext to hide unlawful discrimination.  *Id.*

Defendant maintains that Plaintiff cannot meet his burden to establish a prima facie case of race discrimination. (Doc. No. 26). For the following reasons, we agree.

### 1. Failure to Transfer/Promote Daniel to Position of School Resource Officer

At some point not identified by either party, Daniel applied for the position of School Resource Officer ("SRO") and was denied the position. The SRO position would have offered a $40,000 per year salary, amounting to a $10,450 increase in pay.

To establish a prima facie disparate treatment discrimination charge, Plaintiff must show that he was otherwise qualified for the position in question. Defendant asserts (Doc. No. 33, at 10) and Plaintiff appears to concede (Doc. No. 24, Att. 1, at 81–82) that he was not qualified for the position of School Resource Officer. In order to qualify for the SRO position, one first had to be a member of the Patrol Unit. (*Id.,* at 80–81). Because Plaintiff did not assert that he was or ever has been a member of the Patrol Unit, Plaintiff did not show that he was otherwise qualified for the position of SRO. Daniel therefore did not carry his prima facie burden for disparate treatment discrimination. Because Plaintiff fails to raise any genuine issue of material fact in his disparate treatment charge related to the SRO position, summary judgment related to this claim is hereby GRANTED.

### 2. Failure to Transfer/Promote Daniel to Position of Field Training Officer

In his Complaint, Daniel raised a discrimination claim related to his failure to be offered the position of Field Training Officer ("FTO"). (Doc. No. 1, at 3). Since the filing of his Complaint, Plaintiff has been offered such a position. (*Id.,* at 54–55). Plaintiff states that he refused the position because of the current lawsuit (*Id.,* at 54–55) and because he felt the offer as

-10-

"insincere" and "tainted." (*Id.,* at 61–62). Importantly, Plaintiff asserts that this position is "just a title," (*Id.,* at 55) and not a promotion. (Doc. No. 28, at 11).

In order to succeed in asserting a prima facie case for discrimination, Plaintiff must establish that the refusal to offer Daniel an FTO position was an adverse employment action. The Sixth Circuit defines an adverse employment action as a "materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct." *Policastro v. Northwest. Airlines, Inc.,* 297 F.3d 535, 539 (6th Cir. 2002) (quoting *Kocsis v. Multi-Care Mgmt., Inc.,* 97 F.3d 876, 885 (6th Cir. 1996)). "A materially adverse change might be indicated by a termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished responsibilities, or other indices that might be unique to a particular situation." *Id.* (quoting *Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (6th Cir. 1999)). "Such action usually inflicts direct economic harm." *Freeman v. Potter*, 200 Fed. App'x. 439, 442 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 762 (1998)).

Still, an employee need not have suffered one of the "ultimate employment actions" listed above (i.e., termination, demotion, failure to promote, etc.) to have a viable claim of discrimination. *Id.,* at 442. "A material adverse action may consist of a less distinguished title, diminished options for advancement, or other unique indices." *Id.* (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461–62 (6th Cir. 2000), *Hollins*, 188 F.3d at 662). Adverse actions may be determined based on whether a particular employment action was "objectively intolerable to a reasonable person." *Id.* (citing *Policastro*, 297 F.3d at 539, *O'Neal v. City of Chicago*, 392 F.3d 909, 913 (7th Cir. 2004) (explaining that an employee's "purely subjective preferences for one position over another" do not "justify trundling out the heavy artillery of federal antidiscrimination law" (internal quotations omitted))). In other words, the action must

-11-

have a "'significant detrimental effect' on the employee's status, as evidenced by objective factors, not subjective impressions." *Id.,* at 443 (citing *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999)).

Employment actions that are *de minimis*, however, or that constitute a "mere inconvenience or an alteration of job responsibilities" are not considered to be materially adverse. *Ford v. Gen. Motors Corp.,* 305 F.3d 545, 553 (6th Cir. 2002). A "bruised ego" caused by trivial employment actions, for example, is not sufficient. *Freeman v. Potter*, 200 Fed. App'x. 439, 442 (6th Cir. Tenn. 2006) (citing *Kocsis*, 97 F.3d at 886 (citing *Flaherty v. Gas Research Inst.*, 31 F.3d 451, 456 (7th Cir. 1994))).

For purposes of Title VII, a failure to promote is generally considered an adverse employment action. *See Hale v. Cuyahoga County Welfare Dep't*, 891 F.2d 604, 606 (6th Cir. 1989). Transfers and refusal to make a lateral transfer are generally not considered materially adverse actions. *Freeman*, 200 Fed. App'x. at 444 (citing *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183 (6th Cir. 2004)). "The refusal to transfer, like an involuntary transfer, can amount to an adverse employment action if it significantly reduces the employee's career prospects." *Id.,* at 439.

The Sixth Circuit has held that the refusal to transfer individuals to positions that are more prestigious and would have given plaintiffs opportunities for higher-paying positions, but did not themselves pay more, did not rise to the level of an adverse employment action. *Id.* Similarly, Plaintiff's assertion that the FTO position was "just a title," (Doc. No. 24, Att. 1, at 55) and not a promotion (Doc. No. 28, at 11) belies his claim that his employer's refusal to offer him the position constituted an adverse employment action. Because Plaintiff failed to raise a

genuine issue of material fact, summary judgment on Daniel's disparate treatment claim related to his failure to be offered an FTO position is hereby GRANTED.

### 3. Failure to Transfer/Promote Daniel to Position in Transportation Division

In January 2008, Plaintiff indicated his interest in a position with the Transportation Division. Deputy Pollard, a white male, was hired instead. (Doc. No. 24, Att. 1, at 53). The fourth prong of the prima facie case of discrimination requires Daniel to establish that he was treated differently than similarly-situated white employees. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582–83 (6th Cir. 1992). To meet the burden of demonstrating that another employee is similarly situated, a plaintiff must show that there is someone who is directly comparable to the plaintiff in all material respects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002). In terms of qualifications, Daniel asserts that Pollard was "less qualified" (Doc. No. 24, Att. 1, at 75) and had a "debatable background" (Doc. No. 33, at 11), but does not cite anything to support these allegations.

The Sixth Circuit has held that "[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference of" discrimination. *Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 724 (6th Cir. 2006). Daniel has not alleged anything objective, only his opinion that Pollard was not as qualified as himself. Daniel cites no experience, professional or otherwise, to indicate Pollard was less qualified for the Transportation Division. Plaintiff therefore fails to meet the burden of the fourth prong of the prima facie case. As the Court finds no genuine issue of material fact as to whether Plaintiff was subjected to disparate treatment based on his race in Defendant's failure to transfer Daniel to a position in the Transportation Division, summary judgment in favor of Defendant on this claim is GRANTED.

-13-

*4. Disciplinary Action*

In 2006, Daniel received two written disciplinary actions for three incidents: (1) Daniel's improper use of radio and central white phone while on duty by deviating from the public announcement script (Doc. No. 24, Att. 1, at 37); (2) Daniel's violation of post orders to avoid unwelcomed insults when he called a colleague "stupid" (Doc. No. 24, Att. 2, Ex. 12); and (3) Daniel's jeopardizing of security measures by leaving a security door ajar while on patrol (*Id.*). Daniel claims that Rutherford County's disciplinary actions were unwarranted, and were used as a pretext for refusing to transfer or promote him later.

Disciplinary action, without more, does not rise to the level of an adverse employment action as required by the third prong of the prima facie case. *See Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (holding that written warnings were not adverse employment actions for either discrimination or retaliation purposes); *Rennard v. Woodworker's Supply, Inc.*, 101 Fed. App'x. 296 (10th Cir. 2004) (holding that employer's written reprimand to female employee for not promptly reporting incidents of sexual harassment was not adverse employment action). However, even if Defendant's disciplinary action did constitute an adverse employment action, Plaintiff does not meet his burden on this claim for other reasons.

The fourth prong of the prima facie case of discrimination requires Daniel to establish that he was treated differently than similarly-situated white employees. *See Mitchell*, 964 F.2d at 582–83. To satisfy this prong, Plaintiff asserts that Defendant's disciplinary practices fall "more harshly on non-White individuals than it does on Whites." (Doc. No. 28, at 11). However, Daniel fails to assert any specific facts in support of this allegation. Plaintiff does not refer to any white individuals who evaded discipline for the same actions for which Plaintiff received discipline. Rather, he provides demographic data regarding the percentage of non-white

-14-

residents in Rutherford County, as compared to the percentage of non-whites in the RSCO employee pool. (Doc. No. 28, at 12). This data does not speak to Plaintiff's allegations regarding discriminatory disciplinary practices within the RSCO. As stated previously, this Court has held that "[m]ere personal beliefs, conjecture and speculation are insufficient to support an inference of" discrimination. *Grizzell*, 461 F.3d at 724. As the Court finds no genuine issue of material fact as to whether Plaintiff was subjected to disparate treatment based on his race in Defendant's disciplinary actions against Plaintiff, summary judgment in favor of Defendant on these claims is hereby GRANTED.

### iii. Discrimination: Disparate Impact

Daniel first raises the claim of disparate impact in his Reply Brief to Defendant's Motion for Summary Judgment (Doc. No. 28, at 2–3). The Sixth Circuit has held that new claims may not be brought in response to a motion for summary judgment. *Tucker v. Union of Needletrades, Indus., & Textile Employees.*, 407 F.3d 784 (6th Cir. 2005); *see also Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312 (11th Cir. 2004). Furthermore, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005). We therefore decline to address Daniel's disparate impact claim. The proper procedure would have been for Plaintiff to add these claims to his Complaint or Amended Complaint. *Gilmour*, 382 F.3d at 1315.

### iv. Harassment

Plaintiff also asserts that he was subject to harassment based on his race.[1] To survive Defendant's summary judgment challenge, Plaintiff must establish a prima facie case for harrassment. To do so, Daniel must prove the following elements: (1) he is a member of a

---

[1] Plaintiff brought his harassment claim under both Title VII and the THRA. We will analyze both claims in the same manner. *See Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 31 (Tenn. 1996).

-15-

protected class; (2) he was subjected to unwelcome harassment based on his race; (3) such harassment had the effect of unreasonably interfering with Plaintiff's work performance by creating an intimidating, hostile, or offensive work environment; and (4) there exists some basis for liability on the part of Plaintiff's employer. *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834 (6th Cir. 1996). To evaluate the third prong—whether the harassment was sufficiently severe to create an intimidating, hostile, or offensive work environment—the court should consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.,* 510 U.S. 17, 23 (1993). Courts must examine the totality of the circumstances. *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998). Under this test, "the issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case." *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). The harassment against Plaintiff must be "so severe or pervasive as to alter the conditions of the victim's employment," and must be subjectively and objectively offensive. *Faragher*, 524 U.S. at 786–87. "Mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee," or "the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are insufficient to constitute unlawful harassment. *Id.*

Daniel lists the following occurrences as those that contributed to a hostile work environment over a four year period: (1) he was unjustifiably written up on two occasions (Doc. No. 28, 6–7); (2) he was denied a transfer to the Patrol Division (Doc. No. 24, Att. 1, at 49); (3)

-16-

he was denied a transfer to the Transportation Division (*Id.,* at 52); (4) he was not given an FTO Title (*Id.,* at 53); (5) he overheard a colleague use the phrase "run chicken run" four times (*Id.,* at 66–67); (6) he saw a picture of a confederate flag on the cellular phone of the same individual (*Id.,* at 67); and (7) he saw an arguably offensive picture of a black man resembling his supervisor, Lt. Salandy, sitting on a mule (*Id.,* at 107–09). Salandy placed the picture in his own office and stated that he was not offended by it. (Doc. No. 23, at 3). No one has ever complained about the picture. (*Id.*).

The Court agrees with Defendant that there exists no genuine issue of material fact as to whether Plaintiff was subject to unwelcome harassment based on his race, as he fails to establish an intimidating, hostile, and offensive work environment. Viewing Daniel's allegations as a whole, the incidents were not so severe and pervasive that a reasonable person would find her work environment hostile and abusive. Moreover, Daniel has not presented evidence indicating that any of the alleged incidents of harassment interfered with his work performance. Daniel has reported that since these incidents, he has had "trust issues" with his co-workers and supervisors, and has had his "ups and downs." (Doc. No. 24, at 83). However, Daniel has not asserted that these incidents interfered with his performance at the workplace. Because Plaintiff fails to raise any genuine issue of material fact regarding his harassment claim, this Court GRANTS summary judgment in favor of Defendant.

### *v. Retaliation*

Title VII prohibits an employer from retaliating against an employee who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII.[2] 42 U.S.C. §§ 2000e-3(a). Absent direct evidence of retaliation, as is

---

[2] "The Equal Employment Opportunity Commission ('EEOC') has identified a number of examples of 'opposing' conduct which is protected by Title VII, including complaining to anyone (management, unions, other employees, or

the case here, retaliation claims are subject to the same *McDonnell Douglas* burden-shifting framework as discrimination claims. *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 563–64 (6th Cir. 2004). To establish a prima facie case of retaliation, Plaintiff must show: (1) he engaged in activity protected by Title VII; (2) RCSO knew he engaged in this activity; (3) RCSO subjected him to an adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. *Id.,* at 563. If Daniel establishes a prima facie case of retaliation, the burden shifts to Rutherford County to articulate a legitimate reason for its employment action; if Defendant meets that burden, Plaintiff can prevail only by showing that the articulated reason is false or pretextual. *Halfacre v. Home Depot, U.S.A., Inc*., 221 Fed. App'x. 424, 431 (6th Cir. Tenn. 2007) (citing *Wrenn v. Gould*, 808 F.2d 493, 500–01 (6th Cir. 1987)).

Plaintiff incorporates the allegations asserted in his disparate treatment claim to support his retaliation claim. Mainly, after Daniel allegedly complained about being racially harassed to Salandy, Daniel claims he was subject to "baseless" disciplinary reports, which were then used against Daniel when he applied for promotions and job transfers. (Doc. No. 28, at 16). Defendants assert that Daniel fails to meet a single element of the prima facie case for retaliation. Defendant argues, *inter alia*, that Daniel fails to meet the first prong of the prima facie case for retaliation—that plaintiff must engage in a protected activity—because Daniel did not lodge any sort of formal complaint about the allegedly illegal behavior of RCSO. (Doc. No. 33, at 16–19).

Daniel argues that his protected activity consisted of a complaint to Lieutenant Salandy about racial discrimination by Corporal Parker. (Doc. No. 28, at 16). During his deposition

---

newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under Title VII; and opposing unlawful acts by persons other than the employer—e.g., former employers, union, and co-workers. EEOC Compliance Manual, (CCH) P 8006." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).

about the details of this event, Daniel revealed that the meeting was an informal conversation between himself, Deputy Felix Rankins, and Salandy. (Doc. No. 24, Att. 1, at 111–12). Daniel concedes that Rankins was the only one in this conversation who expressed concern about race discrimination by Parker. *Id.* He also acknowledges that Rankins never mentioned Salandy as an individual who was also discriminated against, nor did Daniel ever tell Salandy that he also felt discriminated against. *Id.*

Daniel himself does not seem to believe that he made any complaints about racial discrimination—when asked repeatedly during his deposition whether he ever complained about discrimination or harassment, Daniel replied that he did not. (*See*, *e.g.*, *id.,* at 111–112). Salandy confirmed this impression, stating in his affidavit that Daniel never complained to him about discrimination or harassment, no one had ever told him Daniel complained about discrimination or harassment, nor had Rankins ever told him he felt Daniel was subject to discrimination or harassment. (Doc. 23, at 3). Since Rankins's comments were admittedly casual in nature, there was no reason, nor is there evidence to show, Daniel was associated with Rankins's complaints. Plaintiff's assertion that he engaged in a protected activity is thus without sufficient evidentiary support to create a genuine issue of material fact.

Without having engaged in a protected activity, Plaintiff cannot establish his prima facie case of retaliation, and the Court therefore GRANTS summary judgment in Defendant's favor on Plaintiff's retaliation claims.

### b. Common Law and Whistleblower Retaliation

Daniel also asserts that he was retaliated against in violation of common law and the Tennessee Public Protection Act, also known as the Whistleblower Law, TENN. CODE ANN. § 50-1-304(a). (Doc. No. 1, at 7). To prevail under both common law and the Whistleblower Law, a

plaintiff must demonstrate, among other things: (1) he was engaged in a protected activity; and (2) that he was actually discharged. *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 535 (Tenn. 2002).

For the reasons set forth above, Daniel was not engaged in a protected activity. Furthermore, Rutherford County never terminated his employment, as he is still employed at RCSO. (Doc. No. 24, Att. 1, at 20). Without having engaged in a protected activity and without having been discharged by RCSO, Plaintiff cannot establish his prima facie case for either common law or Whistleblower retaliation. The Court therefore GRANTS summary judgment in Defendant's favor on Plaintiff's retaliation claims.

### c. Constructive Discharge

Defendant also moves for summary judgment on a constructive discharge claim. To constitute a constructive discharge, the employer must: (1) deliberately create intolerable working conditions, as perceived by a reasonable person; with (2) the intention of forcing the employee to quit; and (3) the employee must actually quit. *Moore v. Kuka Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999). Daniel is still employed at RCSO (Doc. No. 24, Att. 1, at 20), so he fails to meet the final prong of the analysis. The Court therefore GRANTS summary judgment in Defendant's favor on Plaintiff's constructive discharge claims.

### d. Malicious Harassment Under Tennessee Human Rights Act

Finally, Plaintiff asserts a claim of malicious harassment under the THRA, TENN. CODE ANN. §§ 4-21-701 *et seq.* The standard for malicious harassment is different from the other claims charged by Plaintiff, as it requires a higher level of harassment than what may be alleged under Title VII, THRA, common law, or the Whistleblower Act. The offenses intended to be covered under a civil claim of malicious harassment were derived from the criminal offense of

-20-

civil rights intimidation under TENN. CODE ANN. § 39-17-309 (1997). *Id.,* at 468. As the

Tennessee Supreme Court has held, "[t]he legislative history of TENN. CODE ANN. § 4-21-701

indicates that the supporters of the legislation favored creation of a civil remedy for so-called

'hate crimes' committed by ethnic and racial supremacist groups such as the Ku Klux Klan,

Aryan Nation and Skinheads. The civil remedy was to be in addition to, but separate from, the

applicable criminal statutes set forth first in TENN. CODE ANN. § 39-17-313 and then in TENN.

CODE AN[N]. § 39-17-309." *Carr v. Robertson County*, 29 S.W.3d 466, 471 (Tenn. 2000). Thus,

a claim of malicious harassment requires not only that a person acted maliciously, i.e., with ill-

will, hatred or spite, but also that a person unlawfully intimidated another from the free exercise

or enjoyment of a constitutional right. *Id.,* at 473. This unlawful intimidation may be

accomplished by (1) injuring or threatening to injure the plaintiff; or (2) coercing another person

to do so; or (3) damaging, destroying or defacing any real or personal property of another person.

*Safro v. Kennedy*, 2007 Tenn. App. LEXIS 248, 8–9 (Tenn. Ct. App. Apr. 25, 2007).

Defendant argues that summary judgment is appropriate for this claim because: (1)

Plaintiff cannot show Defendant acted maliciously, since Plaintiff was treated no differently than

any other detention officer; (2) Plaintiff cannot show intent to intimidate because there was no

discrimination, as allegations of discrimination made by Plaintiff are unsupported; (3) Plaintiff

cannot show he was deprived of any right secured by the Constitution, as the unwarranted

disciplinary action and denial of transfers do not amount to a deprivation of rights secured by the

Constitution; and (4) the claim should be dismissed pursuant to the Governmental Tort Liability

Act, TCA § 29-20-101 *et. seq*., which states: "Except as may be otherwise provided in this

chapter, all governmental entities shall be immune from suit for any injury which may result

from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary."

As a preliminary matter, Defendant fails on its immunity claim. Tennessee courts have held, "the clear language from the THRA evinces an unmistakable legislative intent to remove whatever immunity a governmental entity may have under the Governmental Tort Liability Act and that the THRA removed the immunity of the sovereign as though the sovereign was a private citizen." *Johnson v. South Cent. Human Resource Agency,* 926 S.W.2d 951, 953 (Tenn. Ct. App. 1996) (citing *Eason v. Memphis Light, Gas & Water Div.*, 866 S.W.2d 952, 988 (Tenn. Ct. App. 1993)). Rutherford County is therefore not immune from any charges filed pursuant to the THRA.

While Defendants are not immune from suit, Plaintiff's claim still fails under summary judgment. This Court has noted that utilization of a malicious harassment charge in the context of employment discrimination would be "rare." *Gann v. Chevron Chem. Co.*, 52 F. Supp. 2d 834, 845 (E.D. Tenn. 1999) (finding plaintiff's malicious harassment claim "bordered on the absurd" where defendant: lowered his rate of pay; placed him on a third shift with trainee employees rather than experienced workers; provided plaintiff with no set-up operator; did not permit him to take his lunch break on several occasions; eventually terminated his employment; and temporarily withheld his short term disability and COBRA benefits). Here, Plaintiff incorporates all of his previous factual allegations to make his prima facie case for malicious harassment. However, these facts, even when taken cumulatively, do not rise to the level of malicious harassment described in the THRA. Daniel does not assert that he experienced any threat or actual injury to himself or to his real or personal property.

For these reasons, Plaintiff cannot establish his prima facie case for malicious harassment. The Court therefore GRANTS summary judgment in Defendant's favor on Plaintiff's malicious harassment claim.


## IV. CONCLUSION

Plaintiff has not demonstrated that a genuine issue of material fact exists regarding any of his claims in the instant matter. For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. No. 20) and **DISMISSES** Plaintiff's claims of racial discrimination, harassment, retaliation, and constructive discharge under Title VII, THRA, common law, the Whistleblower Act, and TENN. CODE ANN. §§ 4-21-701 *et seq.,* in their entirety.

It is so ORDERED.

Entered this the _____ day of January, 2010.


JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT